The Honorable Steven B. Jones State Representative P.O. Box 3040 West Memphis, Arkansas 72303-3040
Dear Representative Jones:
I am writing in response to your request for an opinion on a question involving an employee benefit plan at Mid-South Community College. Specifically, you have enclosed a copy of a letter from a Division of Legislative Audit "Field Audit Supervisor" to the President of Mid-South Community College detailing some aspects of the proposed plan and posing three questions about its legality. The facts surrounding the plan are quoted below:
 This particular plan has been developed by MKA Capital Planning. The plan stipulates contributions by the employer would be utilized to fund life insurance policies. The employee (participant) may also contribute to the plan. The plan's provisions include plan benefits available to the participant (policy loans) generally after termination of employment and an irrevocable long-term interest by Mid-South Community College. There would be no recovery of contributions by Mid-South Community College until the death or the participant.
These are the only facts with which I have been presented regarding the nature of the plan. The three questions posed in the Auditor's letter regarding the legality of this plan are as follows:
 1. Can a state-supported institution of higher education participate in such a plan? If so, can such participation be confined to one employee (i.e., president)?
 2. Would the contributions by Mid-South Community College be considered an allowable investment under the guidelines of Ark. Code Ann. 19-4-805?
 3. Would the contributions by Mid-South Community College be subject to the maximum annual salary provisions of the Higher Education Expenditure Restriction Act (Ark. Code Ann. 6-63-301 t0 6-63-309)?
RESPONSE
I cannot give a definitive answer without more facts regarding the exact nature of the plan. In my opinion, however, based upon the limited facts with which I have been presented, the answer to your first question is "no" unless the plan is executed under some existing statutory authority governing employee benefit plans at community colleges. The answer to the second part of your first question appears to be "no," as any existing statutory authority for such plans contemplate availability to all affected employees. In my opinion the answer to the second question posed is "no," this type of plan does not appear to be contemplated under A.C.A. § 19-4-805. In response to your third question, in my opinion the "Higher Education Expenditure Restriction Act" does not prevent the receipt of employee benefits, so long as authorized by statute, but that seems to be the primary obstacle to the plan in question.
Question 1 — Can a state-supported institution of higher educationparticipate in such a plan? If so, can such participation be confined toone employee (i.e., president)?
I am unable to opine definitely on this question without access to all the relevant facts. I can state, however, that state law currently authorizes various benefit plans for state employees. A number of these plans are offered and coordinated through the State and Public School Life and Health Insurance Board. See A.C.A. § 21-5-401 to -415. Other programs are administered by the Employee Benefits Division of the Department of Finance and Administration. See e.g., A.C.A. § 21-5-501 to -510 (deferred compensation plan for state employees). Some employees (those who are members of the Arkansas Teacher Retirement System) are eligible to participate in a tax-deferred savings plan under A.C.A. §§ 24-7-1201 to -1206. In addition, state-supported colleges are authorized to provide employees an "alternate retirement plan" under A.C.A. § 24-7-801 to -808. This "alternate retirement plan" is "based on the purchase of contracts providing retirement and death benefits. . . ." A.C.A. §24-7-801(1) (Supp. 2001).
The information included with your request does not refer to any particular statutory authority for entering into the plan in question. In my opinion, in order to be legal, the plan referenced in your request must be offered and executed in accordance with some applicable statutory grant of authority in this regard.[1] This is particularly true where, as here, the plan would be one funded by the state agency or institution rather than solely by the employee.
Also pertinent in this regard is the appropriation authority of Mid-South Community College to expend College funds for this benefit plan. Act 278 of 2001 is the appropriation act for Mid-South Community College. It appropriates, both from the "Mid-South Community College Fund" and from "cash funds" of the College, various amounts for salaries and "personal services matching" for the employees of the College. The pertinent descriptions of "Personal Services" and the subset of this classification called" Personal Services Matching" are found in A.C.A. § 19-4-521, a provision of the "General Accounting and Budgetary Procedures Law." The relevant descriptions are as follows:
Personal Services.
 This classification shall be for regular full-time, part-time, extra-help employees, employer matching costs, employer special or extra compensation, overtime earnings, and other employee benefits that are legally authorized.
* * *
 (4)(A) Personal Services Matching. This subclassification shall represent the agency's proportion of the amounts necessary to contribute the agency's share or to match the deductions from the salaries of state employees for social security, retirement, group employee insurance programs, workers' compensation, unemployment compensation contributions, and to provide a state contribution for state employee retirees who are eligible to participate in the health and life insurance programs offered by the state as defined by § 21-5-411 and as authorized by the Chief Fiscal Officer of the State.
Emphasis added.
"Personal services" includes the employer contribution for benefit programs that are legally authorized. Without some statutory authority for the proposed benefit plan, the authority of Mid-South Community College to fund the plan described in your request is questionable. In addition, the statute above clearly envisions "personal services matching" as a category that includes "group" insurance programs. Individual insurance benefit plans would thus not appear encompassed within this budget classification. In my opinion, therefore, the answer to your first question appears to be "no," absent some statutory authority for the plan in question.
An answer to the second part of your question is technically unnecessary in light of my negative answer to the question above. I will note, however, that each of the subchapters authorizing various employee benefit plans contemplate the offering of plans and programs to all eligible employees of an institution or agency and not to just one individual.
Question 2 — Would the contributions by Mid-South Community College beconsidered an allowable investment under the guidelines of Ark. CodeAnn. 19-4-805?
Section 19-4-805 of the Arkansas Code governs the investment authority of state-supported institutions of higher learning with regard to "cash funds." It provides in subsection (a) as follows:
 (a) The state-supported institutions of higher learning shall have the right to determine the depositories and the nature of investments of any of their cash funds which are not currently needed for operating purposes. In making these determinations, these institutions shall seek to obtain the highest possible rate of return for their investments.
This provision governs the investment of cash funds "which are not currently needed for operating purposes." In my opinion the use of such funds for the type of "executive benefit plan" described in your request, would be for" operating purposes" and not for investment purposes. That is, the statute above governs the investment of idle funds not currently needed for operation of the institution and the objective is to maximize return. In my opinion the "secured executive benefit plan" described in your request would be more in the nature of an employee benefit, and thus an operating expense, rather than an investment of idle cash funds. In my opinion, therefore, the proposed expenditure does not fall within the provisions of the statute.
Question 3 — Would the contributions by Mid-South Community College besubject to the maximum annual salary provisions of the Higher EducationExpenditure Restriction Act (Ark. Code Ann. 6-63-301 t0 6-63-309)?
The pertinent "maximum annual salary provision" of the "Higher Education Expenditure Restriction Act" appears to be A.C.A. § 6-63-307 (Supp. 2001), which provides in pertinent part that:
 (a) No employee drawing a salary or other form of compensation from an institution of higher education shall be paid an additional salary or receive additional compensation other than reimbursement for actual expenses from that institution or from any other agency or institution or higher education except upon written certification to and approval by the Chief Fiscal Officer of the State and by the head of each agency or institution that the work performed by the employee for the other agency or institution of higher education does not interfere with the proper and required performance of the employee's primary duties and that the combined salary payments from both agencies or institutions or higher education will not exceed the larger maximum annual salary of the line item position authorized for either agency from which the employee is to be paid.
(Emphasis added).
The question posed is whether the "maximum annual salary provision" of this statute would limit the contributions made by Mid-South Community College toward the "secured executive benefit plan" in question. The statute prohibits compensation in excess of the fixed salary received by the employee of the institution. In my opinion the restriction above does not prevent employees from receiving lawful employee benefits, over and above their salaries, so long as some statute authorizes their receipt. In this regard the maximum annual salary provision above does not limit or restrict, for example, authorized retirement or insurance benefits provided to employees of these institutions. The primary obstacle with the "secured executive benefit plan" in question is that is does not appear that it is authorized by any pertinent law.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] Investment in this type of plan might be said to violate the spirit, if not the letter, of A.C.A. § 4-28-103, which prohibits nonprofit corporations from using public funds to purchase "key-man life insurance as a form of deferred compensation."